UNITED STATES, Appellant,

v

CARL D. ESTILL, Airman Recruit, U. S. Navy, Appellee

9 USCMA 458, 26 CMR 238

No. 11,091

Decided July 11, 1958

*Major Charles R. Larouche,* USMC, argued the cause for Appellant, United States.

*Commander John P. Gibbons,* USN, argued the cause for Appellee, Accused.

### Opinion of the Court

HOMER FERGUSON, Judge:

The single issue in this case, which comes here by way of certification from The Judge Advocate General of the Navy, is whether the board of review has "as a matter of law, the authority to reduce the period of suspension of execution of part of a sentence which period has been prescribed by the convening authority in his action."

The accused pleaded guilty before a special court-martial to three specifications alleging disrespectful language toward superior petty officers, in contravention of Article 91, Uniform Code of Military Justice, 10 USC § 891. A sentence which included a bad-conduct discharge, confinement for three months and forfeiture of $55.00 per month for a like period was adjudged. The con-

vening authority, in his action, approved the sentence but suspended the punitive discharge during the period of confinement and for a probationary period of twelve months thereafter with provisions for eventual automatic remission. The reasons stated by the convening authority in his action for extending the probationary period beyond the customary six months was "because of the seriousness of the offenses of which the accused stands convicted, and because of the short period of confinement." The supervisory authority thereafter approved the sentence as approved, suspended and ordered executed by the convening authority. The board of review which considered the case was of the view "that the long probationary period of twelve months is excessively severe" and accordingly reduced the period of probationary suspension to six months and otherwise approved the sentence.

The establishment of service boards of review is provided for in Article 66 of the Code, supra, 10 USC § 866. In subsection (c) of that Article, Congress enunciated the authority to be exercised by boards of review by providing as follows:

"(c) In a case referred to it, the board of review may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."

Our determination is simply whether or not the action taken by the board in the case at bar comes within this statutory grant of authority. We believe that it does.

In one of the early cases to reach this Court we held that a board of review lacked the power to suspend a punitive discharge. United States v Simmons, 2 USCMA 105, 6 ▮▮▮▮▮▮▮ CMR 105. Although our first impression in that case was that service boards "should have the power" to suspend punitive discharges for policy reasons, we nevertheless concluded that there did not exist an inherent power in courts to suspend. Ex parte United States, 242 US 27, 37 S Ct 72, 61 L ed 129. A board of review, being a purely statutory creature, is limited to affirming "such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66 (c), supra. The power to suspend has been vested by the Congress in the President, the Secretary of the Department and the convening authority. Article 71 of the Code, supra, 10 USC § 871.

It is axiomatic that suspension on the one hand and remission on the other are separate and distinct ▮▮▮▮▮▮▮ legal acts involving different ▮▮▮▮▮▮▮ ent considerations and consequences. United States v Butts, 7 USCMA 472, 22 CMR 262. The former postpones; the latter annuls. United States v Phillips, 1 USCMA 349, 3 CMR 83. In United States v Lanford, 6 USCMA 371, 20 CMR 87, we recognized that the name by which the board's power is denominated is unimportant. What is important, however, is that within the limitations of its own authority "the board of review can, in the interests of justice, substantially lessen the rigor of a legal sentence." This is all that the board of review has accomplished here. The suspension constitutes an integral part of the sentence which may be considered by the board either as a legal issue or as a matter relating exclusively to appropriateness. It was the convening authority who suspended the punitive discharge for a fixed period. The board of review merely reduced that period. The suspension, however, remained undisturbed; only its duration was altered. In this respect it is unquestionably true that the board of review may appropriately mitigate the quantum of punishment "as it is specif-

ically suited to the accused's case." United States v Atkins, 8 USCMA 77, 23 CMR 301. To hold otherwise would, in effect, preclude the board's consideration of the question of appropriateness to any portion of the sentence which a convening authority has acted to suspend. By exercising his suspensory powers the convening authority cannot thereby restrict the board's exercise of its mitigating powers.

Here the board reduced the probationary period with full knowledge of the reason offered by the convening authority for exceeding the "customary" period of suspension. One of the purposes contemplated by Congress in giving the boards broad mitigating powers was "to establish uniformity of sentences throughout the armed forces." Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1187; Hearings before Senate Armed Services Committee on S. 857 and H. R. 4080, 81st Congress, 1st Session, page 18. It may be that the board, in reducing the period of probationary suspension, had in mind the objective of bringing it in line with the "customary" period given in similar cases throughout the armed forces. We conclude, therefore, that the certified issue must be answered in the affirmative and the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

The opinion in this case confuses the right to suspend the execution of a sentence with the duty to determine its appropriateness when legally they are poles apart. The power to determine the latter has been granted to the court-martial originally and a board of review on appeal, but neither has been given the authority to decide the former. The power to suspend must be specifically granted by Congress, and the convening authority's suspension of this accused's bad-conduct discharge was pursuant to authority found in Article 71(d), Uniform Code of Military Justice, 10 USC § 871. A close inspection of that Article will establish that the authority to suspend the execution of a sentence goes up vertically through command channels rather than through judicial forums. Certainly no power to act in that field has been conferred upon boards of review by Congress, either expressly or by fair implication. United States v Simmons, 2 USCMA 105, 6 CMR 105.

Ex parte United States, 242 US 27, 37 S Ct 72, 61 L ed 129 (1916), decided that Federal courts derived no power to suspend sentences either from the common law or the Constitution. In that case, the Supreme Court recognized that, even though judges had exerted the power, with humanitarian motivations, as a probationary measure in special cases "which could not possibly have been foreseen and taken into consideration by the law-making mind in fixing in advance the penalty to be imposed for a particular crime," nevertheless it denied the power to suspend as an encroachment upon either a legislative function to fix sentences or upon the executive power to grant reprieves and pardons.

Congress, to avoid the consequences of that decision, subsequently enacted probation legislation, and since that time the Federal district courts, within certain limits set out by statute, have been empowered to suspend the imposition or execution of sentence and place the defendant on probation. 18 USC § 3651; see also District of Columbia Code, Title 24, § 24–102, Title 11, § 11–757. However, the exercise of the power is in the sentencing court's discretion; 4 Barron and Holtzoff, Federal Practice and Procedure, Rules Edition (1951), § 2266; and shall be "for such period and upon such terms and conditions as the court deems best." 18 USC § 3651, supra.

I would apply the rationale of Ex parte United States, supra, to the military judicial system as follows. The courts-martial have a duty to impose sentence within limits set by Congress, and boards of review have the obligation to affirm such part or parts of the sentence as they deem appropriate within those limits. Congress has not grant-

**461**

ed to the court-martial or boards of review the power to suspend the execution of sentence, and an order to that effect is an encroachment on either the legislative authority to fix the severity of the sentence or the executive power to pardon or reprieve. Without legislation, neither is permissible, but under the Court's holding, a board of review can encroach on either or both.

As to the legislative grant by Congress, I direct attention to the fact that Article 71 of the Code, supra, confers upon the President, the Secretary of a Department, or the convening authority the power to suspend the execution of a sentence. It is to be noted that the Congressional designees are exclusively officials of the Executive Department and, from that alone, it should be apparent that boards of review do not have the power to suspend initially the execution of sentences. In other words, I apply the well-known canon of statutory construction—expressio unius est exclusio alterius.

If the boards of review do not have the authority to suspend the execution of sentences, then the next question is, do they have the authority to review the acts of those who have the power? As a starting point, I believe it worth while to emphasize the fact that if that power exists, it may be used not only to change the terms of the suspension imposed by the convening authority but also to alter those required by a Secretary of the Department or the President, providing they act before the board of review renders its decision. Parenthetically, there is nothing the board of review can do if the suspension occurs later. Furthermore, the President and the Secretaries have been given the power to commute, and I suppose inferentially the Court is holding that a board of review may scale down the commuted sentence if it concludes the change is not appropriate. That principle in essence superimposes the boards of review over the top of all members of the Executive Department in the fields of clemency, parole, probation, commutation, reprieve, and conditional pardon. To so decree is judicial legislation of a grandiose sort, and it is wrong even if the purpose is to give a board of review greater power to aid an accused. My understanding of the judicial power is to interpret the law as it is written, not to recast it under the mistaken pretext that courts must be guided by humanitarian motives. If the law fails to meet the demands of what we believe to be forward progress, then Congress, and not this Court, should make the necessary amendments. Surely, if a Federal district court does not possess the inherent power to suspend a sentence upon conditions without a specific Congressional enactment, then I fail to understand from whence comes authority for boards of review to determine the conditions of suspension.

In trying to evaluate objectively the Court's results, I reach the conclusion that my associates utter, but fail to give consideration to, the principle that a board of review is a statutory body which possesses only the powers specifically granted by Congress. The Congressional grant to a board to "affirm only . . . such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved" (Article 66(c), Uniform Code, 10 USC § 866), cannot be enlarged to encompass conditions supporting an act of grace which may be accepted or rejected by an accused. The right of a convening authority to suspend necessarily includes the right to impose conditions which must be fulfilled before the suspension becomes effective. He has discretion to suspend or not to suspend, and his actions in that regard are not reviewable by any higher authority. If he gives an outright suspension, that is an act of grace separate and apart from the sentence, and if he attaches some conditions to the suspension, it does not change the nature of his act. He could, of course, refuse to suspend and that refusal is not subject to review. Therefore, when he operates between the two limits, I fail to see how the conditional grant becomes reviewable or by what authority members of a board of review can,

in effect, say to the accused, "You need not accept the terms offered you by the convening authority to obtain clemency for we will make you a better deal."

In Ex parte Wells, 18 How 307 (US 1856), the Supreme Court had before it the President's power to pardon or reprieve conditionally, and decided:

"In this view of the Constitution, by giving to its words their proper meaning, the power to pardon conditionally is not one of inference at all, but one conferred in terms.

"The mistake in the argument is, in considering an incident of the power to pardon the exercise of a new power, instead of its being a part of the power to pardon. We use the word 'incident' as a legal term, meaning something appertaining to and necessarily depending upon another, which is termed the principal.

"But admitting that to be so, it may be said, as the condition, when accepted, becomes a substitute for the sentence of the court, involving another punishment, the latter is substantially the exercise of a new power. But this is not so, for the power to offer a condition, without ability to enforce its acceptance, when accepted by the convict, is the substitution, by himself, of a lesser punishment than the law has imposed upon him, and he cannot complain if the law executes the choice he has made."

Here, for all intents and purposes, the accused elected not to reject the lesser punishment, but the board refused to accept the choice he made. It did the unusual by holding that the convening authority erred in reducing the punishment because he was not sufficiently generous. To compensate for his lack of generosity, it tenders a substitute. That is indirectly suspending sentence, if not directly doing so, for obviously if it can better one term, it can change the entire grant.

In United States v Butts, 7 USCMA 472, 22 CMR 262, I wrote:

". . . a sentence can be suspended by . . . [the convening authority] upon certain terms, and even though appellate agencies may not like the conditions imposed, they lack the power to change them. If the terms of probation are illegal, the whole suspension will fail, or the accused need not accept them, or upon remand they may be the subject of reconsideration by the officer who imposed them. But I know of no authority which permits a board of review to affirm an order staying the execution of a sentence on conditions different from those imposed by the reviewing officer."

I reiterate that concept, for when a convening authority extends conditional clemency, either the conditions must be met or the act of grace becomes inoperative. If the conditions imposed by the reviewing officer are illegal, impossible, or immoral, the board has the power either to refuse to affirm that portion of the sentence to which the conditions are attached or to return the case to the responsible officer for further consideration. The accused is not, therefore, left without adequate protection. Compare, for example, United States v Stoehr, 196 F2d 276 (CA3d Cir) (1952), certiorari denied, 344 US 826, 97 L ed 643, 73 S Ct 28 (1952), with United States v Steiner, 239 F2d 660 (CA 7th Cir) (1957), certiorari denied, 353 US 936, 1 L ed 2d 759, 77 S Ct 813 (1957).

While we do not have the power to measure the wisdom of an act of Congress, good reason supports limiting the power to suspend the execution of a sentence to the enumerated individuals and particularly the convening authority. Back as far as United States v Simmons, 2 USCMA 105, 6 CMR 105, Chief Judge Quinn expressed one sound reason in policy for declaring this act of grace outside the ambit of the board's power of review, stating:

". . . In addition, it seems anomalous that a board should have the power to remit a disciplinary discharge entirely, but not to suspend it for a probationary period.

"We note, however, that there are some difficulties with this line of reasoning. Presumably, the desirability of suspending a disciplinary discharge will depend on the possibility of rehabilitating the accused as a worthwhile member of the armed forces. See Manual for Courts-Martial, United States, 1951, paragraph 76e. Evaluation of rehabilitative possibilities must depend in large part on the accused's prior record and personal characteristics. The court-martial has decided that the offense, together with such mitigating circumstances as are established at the trial, renders the accused unfit to remain in the service. The convening authority has approved that decision and has, in addition, decided that, based on the accused's prior record and present rehabilitative prospects, suspension is not warranted. In taking this action, the convening authority is not limited to the trial record. Article 66 of the Code, supra, however, carefully restricts the boards of review to action 'on the basis of the entire record.' The board if thus denied access both to the accused's service record and to the accused himself, even though it may, under the language of Article 66, supra, consider the allied papers attached to the trial record proper. Under such circumstances, it is difficult to see how the board could adequately evaluate the factors involved in suspension and probation and properly discharge the responsibility necessarily incident to a decision as to whether a disciplinary discharge should be suspended."

This policy consideration loses none of its force when applied to the board's modification of the convening authority's act of grace, since its decision is nonetheless an uninformed one.

The convening authority must consider the retention in the service of any person sentenced to a punitive discharge. United States v Wise, 6 USCMA 472, 20 CMR 188. This consideration is part of the individualized review to which an accused is entitled at the convening authority level. In addition, in the usual case of short term-

ers, when a punitive discharge is remitted, the accused is retained in the command of the reviewing officer and a commander is best able to measure the standards which should be met if proper discipline is to be maintained. These considerations entail an estimate on the convening authority's part of the risk running to the service and the probabilities of rehabilitation if the accused is retained in the service. He, therefore, establishes a time interval, during which a suspension may be vacated, in order to protect the service and to ascertain the accused's potential for serving honorably and well in the future. Time limits for such action are not and should not be made uniform, simply and obviously because persons offending against the law do not react identically when offered opportunities to rehabilitate themselves, even though like convictions are involved.

The accused in this case pleaded guilty to addressing language to three of his supervisors, who were at the time executing the duties of their offices, which was thoroughly disrespectful, and in part unprintably obscene. A convening authority's responsibility to maintain the discipline of the service dictates that he not reinstate a serviceman guilty of such blatant acts of disrespect toward his superiors until the offender establishes the probability that there would be no repetition of such outbursts. The chance of this accused's future amenability to discipline was questionable, and so the convening authority rightly placed him on probation for a period of time which would test the merits of his plea that he desired an opportunity to prove his value to the service. The length of time was simply a matter of judgment and the one who had the discretion to exercise clemency is the one who should fix the terms of the grant. Certainly the conditions should not be dictated by those who have no right to suspend, for that permits them to do indirectly what they cannot do directly. Far from believing the board of review mitigated "the quantum of punishment 'as it is specifically suited to the accused's case,'" I feel that the board merely substituted its judgment for that of a convening au-

thority in an area where his determination is supreme. If the accused feels aggrieved by the terms and conditions imposed, he is not required to accept them, but rejection is a personal right which runs to him and not to a board of review.

For the foregoing reasons, I would answer the certified question in the negative, reverse the decision of the board of review, and return the record to The Judge Advocate General of the Navy for reference to a board of review for a reconsideration of the sentence. As to the terms of the suspension, if they are now of any importance, the board should have no option but to make recommendations for modification to those authorities in whom such power resides. United States v Cavallaro, 3 USCMA 653, 14 CMR 71; United States v Freeman, 4 USCMA 76, 15 CMR 76.