UNITED STATES, Appellee

v

LESTER N. ANDREASON, Staff Sergeant, U. S. Air Force,
Appellant

No. 27,363

April 12, 1974

*Lieutenant Colonel James LaBar* argued the cause for Appellant, Accused. With him on the brief was *Colonel William E. Cordingly.*

*Major Stark O. Sanders, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Colonel C. F. Bennett.*

### OPINION OF THE COURT

QUINN, Judge:

This appeal concerns the validity of the revocation of an order suspending accused's court-martial sentence.

On October 30, 1972, at Travis Air Force Base, California, the accused was convicted by a general court-martial of wrongful transactions with marihuana and was sentenced to a bad-conduct discharge, confinement at hard labor for 8 months, and accessory penalties. The conviction was affirmed by a court-martial authority to whom the record had been transferred for review as the convening authority was disqualified from taking action on the case because he had granted immunity to a witness at the trial. The order of affirmance directed that the accused be confined at the 3320th Retraining Group, Lowry Air Force Base, Colorado, for "retraining," pending completion of appellate review. The accused was so transferred and apparently arrived at the retraining group on February 5, 1973.

On May 7, 1973, about 2 months before completion of the adjudged period of confinement, the commander of Lowry Technical Training Center, the superior command of the retraining group, promulgated General Court-Martial Order No. 69. The order provided that so much of the accused's sentence pertaining to the discharge, confinement and forfeitures "remaining subsequent to the date of this order, is suspended until 6 May 1974," with provision for automatic remission. However, on June 1, Order No. 69 was "revoked" by General Court-Martial Order No. 83. No evidence of a hearing on the revocation, see Article 72, Uniform Code of Military Justice, 10 USC § 872, appears in the record but an explanation of the circumstances leading to it appears in an affidavit by Colonel Wood, commander of 3320th Retraining Group, that is a part of the Government's reply to the accused's petition for grant of review by this Court. We granted review of the accused's petition to consider whether, as alleged by appellate defense counsel, the revocation order "was of no force and effect."

26

The accused's period of enlistment expired on September 19, 1972, while he was awaiting trial. Colonel Wood's affidavit indicates that the accused met with a classification board on March 15, 1973. Before the meeting, he had "assured" his "retraining team" [a group of retraining staff members], see Air Force Pamphlet 125-8, at 5 (1972), and he repeated to the classification board, that he "would reenlist for one year in order to receive an Honorable Discharge." [1] The board "strongly recommended" that the accused be returned to duty, with a 1-year suspension of the remaining portions of his sentence. Colonel Wood "reaffirmed" this recommendation, and Order No. 69 was promulgated by the commander of the center. Shortly thereafter, the accused informed Colonel Wood that "he had changed his mind" and would not extend his enlistment. On May 10, 1973, 3 days after issuance of Order 69, the accused underwent a "psychiatric evaluation" which indicated he was "qualified for administrative discharge" on the ground of a "character and behavior disorder." Colonel Wood avers that "[b]ecause of this entire sequence of events," the accused was again brought before a classification board. On this occasion, the board recommended execution of the punitive discharge; Colonel Wood concurred. These recommendations were followed by Order 83, which, as noted, revoked Order 69. Without referring to his earlier statement as to the reason for the recommendations to execute the accused's discharge, Colonel Wood stated that the reason for revocation of Order 69 was "noncompliance with paragraph 7-8c, AFM 125-2." We shall refer to this paragraph later in our opinion.

The Government contends that Order 69 was properly revoked for either of two reasons: First, Order 69 was void because it was promulgated in violation of Air Force Manual 125-2 (1971); secondly, the accused's promise to extend his enlistment was a precondition to suspension and the failure of the condition justified revocation of the order.

The Air Force takes pride in its retraining program. As of 1972, it had handled over 10,000 prisoners. Five-year followup statistics indicate that for the period 1966 through 1970, careful evaluations of retrainees 6 months after return to duty found 87 percent of them rated as average or above average in performance of duties; other followups indicate that 80 percent of retrainees returned to duty had successfully completed their enlistment to discharge or reenlistment. Air Force Pamphlet 125-8, at 7-8 (1972). This degree of success is so extraordinary in comparison to correctional programs in the civilian community, see President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society* 49 (1967), that we approach with special wariness the Government's sweeping claim that a suspension order by the retraining command can be nullified *nunc pro tunc* on the basis of a condition or circumstance not amounting to an offense or other violation of standards of good behavior that is not spelled out in the order. *Cf.* United States v Lallande, 22 USCMA 170, 46 CMR 170 (1973). See also United States v May, 10 USCMA 358, 27 CMR 432 (1959).

■ The Government and the accused have proceeded on the unstated assumption that the commander of the retraining command has the general power to suspend. Our review of the Uniform Code and the Manual for Courts-Martial, United States, 1969 (Rev.) confirms the assumption. Under Article 74(a) of the Code, the Secretary of an armed force, and certain persons designated by him, can suspend the unexecuted part of any sentence, other than one approved by the President; a commanding officer is within the group of allowable designees. Designation is by department regulation. MCM, paragraph 97 *a.* An officer exercising general court-martial jurisdiction over a retraining group command is authorized by the Air Force Secretary to suspend an unexecuted sentence. AFM 125-2, paragraph 7-4 (1971). We turn, therefore, to the argument that the ac-

---

[1] Although Colonel Wood refers to reenlistment for 1 year, it is apparent that what was contemplated was an extension of enlistment for a period that would provide for accused's retainability in the Air Force for 1 year.

cused's promise to extend his enlistment was part of a "contract" for suspension with the commander, and his willful failure to perform "resulted in a total breach of the agreement," which justified "rescission."

■ Contract law does not control the administration of justice. 17 Am Jur 2d, *Contracts* § 193 (1964). Even if it did, breach of a condition of an effective contract is entirely different from the failure of consideration for a contract; the one contemplates a binding agreement as to which a breach of a material condition by one party gives the other the right to terminate and sue for damages or to disregard the breach and treat the contract as still continuing; the other means that no contract was ever entered into. Since the Government argues in terms of breach of a condition, the breach might be a ground to terminate the suspension, a matter which we do not now decide, but under the Uniform Code, termination could be effected only after a hearing, at which the accused is entitled to be represented by counsel. Article 72(a), UCMJ, 10 USC § 872. United States v Cecil, 10 USCMA 371, 27 CMR 445 (1959); United States v May, supra. If the accused's failure to extend represents a breach of the contract, Order 83 could not revoke the suspension effected by Order 69; but the breach might perhaps be the basis for vacation of the suspension.

■ ■ Apart from the language of the Government's argument, we are disinclined to treat the accused's promise to extend his term of service as the legal consideration for a contract for suspension. The idea that such a promise can itself produce an enforceable contract for a grant of suspension is so opposed to the purposes of suspension, generally, and to the mission and program of the retraining command, in particular, that we would be inclined to the view that as a contract it would be against public policy. See 17 Am Jur 2d, *Contracts* §§ 208–211 (1964). At any rate, our reading of Colonel Wood's affidavit convinces us that Order 69 was promulgated on the basis of the regular recommendations for suspension, not on the accused's promise to extend his term of service. If the alleged promise had any relation to

the suspension, a matter we need not now decide, it was only as a condition, the failure of which could lead to vacation of suspension. Clearly, it was anticipated that the promise would be fulfilled after, not before or contemporaneously with, the suspension order. In other words, it is apparent from the affidavit that the alleged promise to extend was not a condition precedent but a condition subsequent to suspension; the failure to perform it could justify vacation of the suspension, but it was not essential to the grant of suspension. We conclude, therefore, that at its issuance, Order 69 was legal. As we shall note later, it provided for a period of suspension longer than that authorized by paragraph 88*e* of the Manual for Courts-Martial, but that aspect of the order did not invalidate the suspension, and, if improper, the irregularity could be cured by reduction of the probation period to allowable limits. United States v Stovall, 16 USCMA 291, 36 CMR 447 (1966). So far as it provided for suspension, therefore, Order 69 was lawful and operative, without any extension of enlistment by the accused.

We turn now to the Government's contention that Order 69 was void at issuance, irrespective of the accused's promise to extend his enlistment. The contention has two parts. First, the Government argues that suspension of accused's sentence "was not possible and could not be effected" and, therefore, Order 69 was "null and void." The argument is based on the fact that the accused's term of enlistment had expired before the conviction but that circumstance does not, as we shall point out in our discussion of the second aspect of the argument, bar suspension of the accused's sentence. The second part of the argument that Order 69 was a nullity at issuance focuses on Colonel Wood's assertion that the order was revoked "[b]ecause of noncompliance with paragraph 7-8c, AFM 125-2." Government counsel contend that noncompliance with the cited provision of the Air Force manual made the order void; and they maintain that revocation of a void order is the appropriate and approved means of insuring that it is not given any effect. See AFR 10-7, paragraph 1-16c(4).

The manual in issue establishes as Air Force policy the restoration to duty of persons "thought physically, mentally, and morally qualified to become useful members of the Air Force." Air Force Manual 125-2, paragraph 7-2. Citing provisions of the Uniform Code and the Manual for Courts-Martial, it comments on the authority of various commanders to remit and suspend. Paragraph 7-4. Relevant to this appeal are its reference to paragraph 88 of the Manual for Courts-Martial and its delineation of "restoration procedures" in paragraph 7-8c. The latter reads as follows:

> c. A prisoner confined at a retraining group whose sentence includes an unexecuted punitive discharge, who has less than 1 year retainability, will be restored to duty by:
>
> (1) Voluntarily extending his enlistment in full months under the provisions of AFM 39-9 [superseded by AFM 35-16, change 17] to insure 1 year of retainability after restoration.
>
> (2) Remission or suspension of the unexpired portion of the sentence and appropriate modification of forfeitures.

 We are not informed of the purposes intended to be served by extension of the term of obligated service,[2] but the Government's argument implies that the draftsman of the provision contemplated a probationary period of that length as essential to an informed assessment of the accused's capability of, in the words of the Manual for Courts-Martial, "refraining from further misconduct." MCM, paragraph 88e. Thus, in the view of Government counsel on this appeal the provision forbids a grant of probation unless the accused has not less than 1 year of retainability, which would be the period of probation. If that construction of the provision is correct, it suggests that the draftsman still perceived suspension of sentence as putting "the onus upon the accused to prove that he is entitled to be restored to duty, rather than on the military authorities to prove

that he is not entitled to be restored." Legal and Legislative Basis, MCM, 1951, at 126 (1951). This conception of probationary status was changed by the Uniform Code; it contemplates that unless the suspension is vacated for accused's misconduct and after a hearing thereon, remission of the suspended parts of the sentence is automatic, not a matter for further discretionary judgment. United States v Cecil, supra; United States v May, supra. In the words of the draftsmen of the 1969 Manual, which incorporated the *May-Cecil* construction of the Uniform Code into the Manual, "Actually, all that is required is that he [the probationer] not get in trouble which would justify vacation." Department of the Army Pamphlet 27-2, Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Rev.), at 17-6 (1970). Construction of the regulation as urged by the Government could result in a determination of illegality; it should be avoided if at all possible. United States v Smith, 3 USCMA 336, 12 CMR 92 (1953).

Except as regards a death sentence, Congress has imposed no conditions precedent upon exercise of the power to suspend. Article 71, UCMJ. Similarly, the Manual for Courts-Martial does not condition exercise of the power upon the existence of particular circumstances, except as to a sentence approved by the President. See MCM, paragraphs 88e and 97a. Perhaps, the President can restrict exercise of the power, without thereby impairing the discretion conferred upon commanders by the Uniform Code, but he did not do so. However, he did provide that a suspension cannot "extend beyond the current enlistment or period of service," and in no case should it be "unreasonably long." MCM, paragraph 88e. Manifestly, these periods can be less than 1 year in length. At least facially, therefore, it would appear that a directive by a service secretary forbidding exercise of the power of suspension unless the accused has a full year of retainability would be inconsistent with the Manual's intention, if not its mandate. We need not, however, de-.

---

[2] The Government does not challenge, and we need not determine, the right to extend an enlistment after the period of enlistment or other term of obligated service has expired.

cide whether inconsistency exists. As we read the Air Force manual provision, it does not forbid exercise of the power of suspension if the accused has less than 1 year of retainability at the time.

■ Paragraph 7-8c of Air Force Manual 125-2 does not condition the act of suspension, but the act of restoring the accused to duty. Suspension of sentence and restoration to duty need not, as they did not in this case, take place contemporaneously. As we read the provision, it requires only that antecedent to restoration to duty, the accused's term of retainability will be at least 1 year. The requirement for retainability may have the effect of imposing a condition upon the accused the nonfulfillment of which may perhaps justify vacation of a suspension previously granted, but it does not prevent exercise of the power to suspend. If suspension is accomplished before the accused is restored to duty, by its own terms, paragraph 7-8c(1) is inapplicable as restoration to duty is not yet involved. Colonel Wood's affidavit clearly indicates that Order 69 was promulgated when the accused was not yet restored to duty. At its issuance, therefore, the order was not subject to paragraph 7-8c and to no other apparent impediment that affected its validity. Consequently, it could not, thereafter, be denied legal effect as of the date of its promulgation. In other words, Order 83 could not revoke it *nunc pro tunc.*

Whether the accused's restoration to duty is conditioned upon his extension of enlistment or whether extension became an implied condition of the suspension need not detain us. *Cf.* United States v Cox, 22 USCMA 69, 46 CMR 69 (1972). Suffice it, that the record of action on the accused's sentence must be corrected to indicate that Order 69 suspended the unexecuted portions of the sentence and that suspension is still outstanding.

The decision of the Court of Military Review as to the sentence is reversed. The record of trial is returned to the Judge Advocate General for submission to the court for further proceedings consistent with this opinion. See United States v Glaze, 22 USCMA 230, 46 CMR 230 (1973).

Chief Judge DUNCAN and Senior Judge FERGUSON concur.