UNITED STATES, Appellee

v.

BENNEY RAY SIMMONS, Seaman, U. S. Navy, Appellant

2 USCMA 105, 6 CMR 105

No. 940

Decided December 31, 1952

CDR. Raymond van Wolkenten, USN, and LT. COL. Kenneth E. Murphy, USMCR, for Appellant.

CDR. Thomas E. Blade, USN, and CAPT. Carl G. Lutz, USMCR, for Appellee.

ROBERT E. QUINN, Chief Judge:

The accused was convicted by general court-martial[1] at the U. S. Naval Air Station, Memphis, Tennessee, of desertion in violation of Article 85 of the Uniform Code of Military Justice, 50 USC § 679. He was sentenced to a bad-conduct discharge, total forfeiture of pay, and confinement for eighteen months. The convening authority approved only so much of the finding as found the accused guilty of absence without leave and reduced the period of confinement and forfeitures to six months, approving the bad-conduct discharge. A Navy board of review affirmed the findings as approved below but suspended the bad-conduct discharge on probation for the period of confinement and six months thereafter. The following question has been certified to us by The Judge Advocate General of the Navy:

"Has a Board of Review, as a matter of law, the authority to suspend a bad conduct discharge for a probationary period, as was done by the Board of Review in this case?"

Our first impression of the problem presented by this case is that the service boards of review should have the power to suspend a disciplinary discharge. A board of review is expressly given powers of remission and mitigation and is directed to affirm "such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Uniform Code of Military Justice, Article 66(c), 50 USC § 653. The plenary power of the boards of review over both the appropriateness and legality of sentences is made clear by the House and Senate Committe Reports on the Code, each of which contains the same language concerning Article 66:

"The Board may set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate. It is contemplated that this power will be exercised to establish uniformity of

[1] 5–52–G–247.

106

sentences throughout the armed forces." [House Report No. 491, 81st Congress, 1st Session, on H. R. 4080; Senate Report No. 486, 81st Congress, 1st Session, on H. R. 4080.]

We are impressed by the defense argument of the desirability of having this power vested in the boards of review, and recognize merit in the contention that boards of review cannot adequately fulfill the mandate either to impose appropriate sentence or insure uniform sentence practices throughout the services unless they have the power to suspend disciplinary discharges. In addition, it seems anomalous that a board should have the power to remit a disciplinary discharge entirely, but not to suspend it for a probationary period.

We note, however, that there are some difficulties with this line of reasoning. Presumably, the desirability of suspending a disciplinary discharge will depend on the possibility of rehabilitating the accused as a worthwhile member of the armed forces. See Manual for Courts-Martial, United States, 1951, paragraph 76e. Evaluation of rehabilitative possibilities must depend in large part on the accused's prior record and personal characteristics. The court-martial has decided that the offense, together with such mitigating circumstances as are established at the trial, renders the accused unfit to remain in the service. The convening authority has approved that decision and has, in addition, decided that, based on the accused's prior record and present rehabilitative prospects, suspension is not warranted. In taking this action, the convening authority is not limited to the trial record. Article 66 of the Code, supra, however, carefully restricts the boards of review to action "on the basis of the entire record." The board is thus denied access both to the accused's service record and to the accused himself, even though it may, under the language of Article 66, supra, consider the allied papers attached to the trial record proper. Under such circumstances, it is difficult to see how the board could adequately evaluate the factors involved in suspension and pro-

bation and properly discharge the responsibility necessarily incident to a decision as to whether a disciplinary discharge should be suspended.

These, however, are largely arguments of policy. If interpretation of legal precedents and statutory authority made the question a close one, we would be inclined to find authority for the boards of review to exercise this power. Unfortunately, the law does not appear to permit this result.

While some of the earlier American cases lend authority to the proposition that there is an inherent power in courts to suspend a sentence, this theory was squarely refuted by the United States Supreme Court in Ex parte United States, 242 US 27, 61 L ed 129, 37 S Ct 72. The Supreme Court there noted that most of the earlier cases were based on a misapprehension of the English common law. Even if there existed this inherent power in courts of general jurisdiction, it would still be difficult to say that the same authority attached to a body such as a board of review. These boards are purely creatures of statute and their power and authority—like that of the court-martial itself—must be found within the confines of the creating legislation.

Turning to the Uniform Code of Military Justice itself, it will be seen that Article 66, supra, confers no express power of suspension upon boards of review. Article 71, 50 USC § 658, does give this power to The President, to the Secretary of the Department, and to a convening authority. It is significant that, although boards of review are mentioned in the same article, the power of suspension is not specifically conferred upon them. This singling out of specific officials for the exercise of power is itself a weighty argument that Congress intended to limit the power to those designated.

The historical development of the power of suspension in the military sphere also sheds some light on this problem. The only provision relating to suspension that was present in the Articles of War of 1874, and those prior thereto, was the article that permitted the suspension of a sentence of death or dismissal of an officer pending approval by The President. Articles of War of 1874, Article 111. Winthrop points out, however, that there existed a practice of "conditional remission." Sentences were remitted on express conditions such as that the accused faithfully served their full terms of enlistment, gave bond for future good behavior, or took an oath of allegiance and obedience to the laws. Winthrop's Military Law and Precedents, 2d ed., 1920 Reprint, pages 469–470. This power was limited to officers "authorized to order a general court-martial." Articles of War of 1874, Article 112. Winthrop notes that "a better designation—one more in harmony with the other provisions relating to the action of the reviewing authority—would be: 'Any officer authorized to execute the sentence of a court-martial.'" Winthrop, supra, page 471. This suggestion of Winthrop's was apparently adopted by 1917, since Article 50 of the Articles of War of that year provides that "The power to order the execution of the sentence adjudged by a court-martial shall be held to include, inter alia, the power to mitigate or remit the whole or any part of the sentence." Also, there appeared in that year an article authorizing authorities competent to order execution of a sentence to suspend the execution of the sentences including a dishonorable discharge, forfeiture of pay, or confinement. Articles 52 and 53 of the 1917 Articles of War. These two articles were consolidated, with only minor changes, into Article 52 of the 1920 Articles of War. This provision remained substantially unchanged until the 1948 revision. Article 51 then provided that "the power of the President, the Secretary of the Army, and any reviewing authority to order the execution of a sentence . . . shall include the power to mitigate, remit, or suspend the whole or any part thereof."

The important factor which we derive from the historical development of the suspension power is that it has been, without exception, vested solely in those reviewing authorities which had the power to order execution of a sentence. Boards of review, from their statutory

inception in 1920 to the present, have never had the power to order sentences executed. It follows, therefore, that they have never before had the power to order a sentence suspended. Our attention has been called to no service cases adopting a contrary rule.

If Congress had intended to alter this prior consistent policy in relation to the sentence powers of a board of review, it seems to us that it would have done so in express language. This failure to confer the power expressly, appears in the light of historical development of military criminal law, to be even more persuasive that Congress did not intend to grant it or at least overlooked making such grant. Indeed, by Article 71 of the Code, supra, Congress has continued the previous pattern of limiting the power of suspension to The President, to the Secretary of the Department, and the convening authority, who may order the sentence executed. Concededly, it is anomalous that a board of review can remit a punitive discharge entirely but is powerless to suspend it under a probationary guarantee of continued good behavior.

It is our conclusion that the authority claimed by the Navy board of review to allow suspension of a bad-conduct discharge cannot be found in the Uniform Code of Military Justice, 50 USC §§ 551-736. The question certified is answered in the negative, the decision of the board of review is reversed, and the case is remanded to The Judge Advocate General of the Navy for referral to the board of review for further action not inconsistent with this opinion.

Judges LATIMER and BROSMAN concur.