UNITED STATES, Appellee

v.

MARIANO CAVALLARO, Private, U. S. Marine Corps, Appellant

3 USCMA 653, 14 CMR 71

Max Schultz, Esquire, John Wattawa, Esquire, and LT CDR John J. Nelson, USNR, for Appellant.

CDR Richard J. Selman, USN, and CAPT Carl G. Lutz, USMCR, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by general court-martial in Korea and found guilty of two offenses proscribed by the Uniform Code of Military Justice; one, a violation of Article 91, 50 USC § 685, by disobeying the lawful order of a superior noncommissioned officer; and, two, a violation of Article 99, 50 USC § 693, by cowardly conduct in refusing to accompany a fire team beyond the main line of resistance. The court-martial imposed a sentence which included a dishonorable discharge, forfeiture of all pay and allowances, reduction to the grade of private and confinement at hard labor for 12 years. A recommendation for clemency signed by five of the members of the court-martial was attached to the record. It contains the following statement: "In view of the accused's previous good record, his youth, immaturity, low mental endowment, his condition, which rendered adherence to the right 'more than normally difficult' for him, and the fact that after talking to the chaplain he apparently tried his utmost to overcome his fear for a period of three days, the following members of the court recommend Private First Class Mariano Cavallaro to the clemency of reviewing authorities." The convening authority reduced the period of confinement to 10 years but otherwise approved the findings and sentence.

On January 28, 1953, the board of review in the office of The Judge Advocate General of the Navy, after reviewing the record, issued a form decision affirming the findings and sentence as approved by the convening authority. On the same date, the board of review attached to the record a memorandum in letter form addressed to The Judge Advocate General recommending that substantial clemency be exercised in the case. On February 27, 1953, the Assistant Secretary of the Navy for Air reduced the period of confinement to five years and on April 29, 1953, accused filed a petition for review with this Court. We granted the petition, expressly limiting our consideration to the question of whether the language found in board of review's recommendation for clemency impeached its finding that the sentence was correct in law and in fact.

Disposition of that issue makes it necessary to discuss the powers and duties of boards of review as affecting the action they might take in affirming a sentence. Article 66, Uniform Code of Military Justice, 50 USC § 653, prescribes for the establishment, powers, and duties of boards of review. Subsection (c) thereof states as follows:

"(c) In a case referred to it, the board of review shall act only with respect to the findings and sentence as approved by the convening authority. It shall affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In con-

sidering the record it shall have authority to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."

The nature of the power which Congress intended to confer upon boards of review by virtue of Article 66 is shown by the House and Senate Committee Reports, each of which contains the following language regarding the above-quoted Code provision.

". . . The Board may set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate. It is contemplated that this power will be exercised to establish uniformity of sentences throughout the armed forces." [House Report No. 491, 81st Congress, 1st Session, on H.R. 4080, page 31; Senate Report No. 486, 81st Congress, 1st Session, on H.R. 4080, page 28.]

We had not supposed there was any doubt about the power of a board of review to reduce any sentence it deemed inappropriate or excessive as a matter of law or fact. However, there appears to be some uncertainty in spite of the fact that the Code explicitly states a board of review shall affirm such part or amount of sentence as it determines from the entire record should be affirmed. In the light of that grant of authority, it should be basic doctrine that a board of review should not approve any sentence which, in view of the entire record, it concludes is not fair and just. It is true that Article 66 (c) of the Code does not authorize a board of review to change the form of punishment imposed by a court-martial, nor may it suspend all or a portion of it; but failure of Congress to grant that authority has no bearing on the power to reduce a sentence to make it appropriate.

We have, in two previous cases, discussed the authority of boards of review to consider and deal with sentences. In United States v. Simmons, 2 USCMA 105, 6 CMR 105, we were confronted with the question of whether a board of review could suspend a bad-conduct discharge for a probationary period. We held that only those reviewing agencies included within the express grant from Congress were given powers of suspension, and since boards of review were not among those mentioned, they could not suspend a sentence or any portion thereof. In United States v. Bigger, 2 USCMA 297, 8 CMR 97, we were concerned with the power of the board of review to affirm a sentence of confinement for life when it found facts which made a death penalty illegal. We held that boards of review, by Congressional authority, could affirm such a sentence even though by so doing a change in the type of punishment resulted. It should be apparent from the short resume of those cases that we were not confronted with any question of the power to reduce. While boards of review cannot change the nature of the punishment, except as might be involved in the Bigger case, that does not prevent them from treating an accused with less rigor than their authority permits. The difficulty we encounter in this case is that we are unable to ascertain whether the members of the board of review understood clearly that principle.

Before discussing the particular statements made by the board of review in the memorandum recommending clemency, we desire to make crystal clear our views on two principles bordering on those involved in this case. Firstly, we are cognizant of the strict rule which applies to attempts to impeach verdicts and findings, and we are not disposed in any way to relax that rule. Secondly, we do not desire to influence adversely the free exchange of information between boards of review and other military authorities charged with the responsibility of considering the appropriateness of any sentence. Congress has seen fit to grant to certain reviewing authorities the right to commute or suspend the execution of a sentence, but it did not extend that authority to boards of review. Accordingly, there is no reason why members of these boards should not make recommendations to appropriate

authorities to exercise any powers of clemency or cummutation not possessed by them. However, there is a duty on members of boards of review to act within their own sphere and they should not approve a sentence they consider excessive and then appeal to others to reduce. All persons who have any responsibility in fixing, affirming, or reviewing sentences should meet their responsibility by adjudging or affirming a fair and just sentence without regard to any further reductive action that might be taken by others who will subsequently act on the record.

In the instant case, we are genuinely perplexed by the statement of the board of review and the remarks ▆▆▆▆▆▆ ■ of counsel during oral arguments. Implicit in both is a suggestion that boards of review do not understand fully the factors they may consider in determining the appropriateness of sentence. The memorandum of the board of review called attention to the report of a psychiatric examination contained in the allied papers. The report stated, in part, that although the accused was considered to have been sufficiently free from mental disease to be able to distinquish right from wrong and adhere to the right, and to have sufficient mental capacity to understand the nature of the proceedings and cooperate in his defense, he nevertheless, had suffered extreme anxiety after a companion had been killed; that he had approached his company commander for assistance, who in turn had referred him to the chaplain; that after talking with the chaplain, the accused returned to his duty for several days but became so frightened that he felt himself unable to go forward to his assignment; and that the diagnosis established he suffered from an "anxiety reaction" which made adherence to the right more than normally difficult. The psychiatric report concluded with the statement that "the effect of repeated, prolonged stress and its resulting anxiety on the subject named man's dependent, immature, character structure may be taken into account by the court in extenuation of the offense." In addition to quoting from the report, the board members noted that the accused had attempted to overcome his fear for several days prior to the date of the offense; that theretofore he had performed outpost duties very well; and that five members of the court-martial had recommended clemency. Besides the foregoing, the board's memorandum contains the following statements which reflect a lack of appreciation of its powers to fit the punishment to the crime as authorized by the entire record:

"It is recommended that consideration be given to a substantial reduction in the period of confinement in this case with a view to restoring the accused to duty when found practicable for the reasons stated below.

• • • • •

"We consider that the sentence is probably excessive in view of the circumstances, but is not so in law, and we have no basis to say that it is in fact. The circumstances plus the mitigating factors which may be given weight in clemency action, in our opinion warrant the further exercise of very substantial clemency.

"It is believed that the accused can redeem himself and can be salvaged for honorable service."

We do not know, and we have no way of ascertaining, what sentence the board deemed appropriate. The first part of the first quoted paragraph from the memorandum suggests that a substantial reduction in the period of confinement should be considered. In the light of that statement, we wonder why the board of review affirmed the sentence. There is little reason for it to recommend that some other authority take action that can be accomplished by it to reduce a sentence if it considers it to be excessive. The Uniform Code cannot be interpreted to deny to the board of review that authority. In the second part of the first paragraph, the board of review mentions restoration to duty, which is a proper subject for consideration by those who have power to suspend and therefore may be recommended as the board of review does not have such power. The second

paragraph of the memorandum quoted above, deals with appropriateness and clemency. The first part indicates a conclusion that the sentence was excessive, and therefore inappropriate. The second part combined with the last paragraph indicates a belief that the accused was a proper subject for rehabilitation. Because reduction, suspension, clemency, and restoration are used indiscriminately, we are unable to ascertain the true basis the board of review used to affirm the sentence but we are convinced that many factors which it might use properly in determining an appropriate sentence were not considered. Such being our belief, we are constrained not to affirm the sentence. An accused is entitled to have his sentence judged in the manner permitted by law and to accomplish this, we return the record to the board of review for clarification. When reconsidering the sentence, the board of review should consider the appropriateness of the sentence in the light of the entire record before it, giving due consideration to the factors set forth in paragraph 76a and other parts of the Manual and any other factors in the record which tend to establish a fair and just sentence.

The record is returned to The Judge Advocate General of the Navy for reference to a board of review for reconsideration of the sentence in the light of the views we herein express.

Chief Judge QUINN and Judge BROSMAN concur.