**UNITED STATES**

v.

**Raymond D. SILVERNAIL, Jr., 090 48 9233, Private (E–1), U. S. Marine Corps.**

**NCM 76 0314.***

U. S. Navy Court of Military Review.

Sentence Adjudged 18 Sept. 1975.

Decided 13 May 1976.

* The Judge Advocate General of the Navy has certified this case to USCMA for review. Review by USCMA pending.

LT Howard L. Schwartz, JAGC, USNR, Appellate Defense Counsel.

LTCOL P. N. Kress, USMC, Appellate Government Counsel.

Before NEWTON, LAPPIN and FULTON, JJ.

NEWTON, Senior Judge:

Appellant, a seventeen year old Marine, was convicted at special court-martial by judge alone of housebreaking and larceny in violation of Articles 130 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 930 and 921. A guilty plea was entered at trial.

The offenses involved entering a package liquor store on base, taking alcoholic beverages of a value of $96.90, and drinking those beverages over the next several nights, with help, in the barracks. Appellant confessed to the crime when questioned by Government officials. He sought return to active duty in lieu of a punitive discharge.

The sentence, as approved, includes a bad conduct discharge. The trial judge recommended that consideration be afforded to suspending the discharge. Prior reviewing authorities declined to do so.

On 12 March 1976 this panel of the Court of Military Review returned the record to the Judge Advocate General of the Navy with the request that he exercise his authority, and suspend the bad conduct discharge under the provisions of Article 74, UCMJ. The basis for that request was set forth as: the appellant's young age; his short length of prior service; the lack of prior disciplinary action; and the lack of gravity of the offenses as shown by the circumstances surrounding their commission. By unanimous decision, at that time, this panel concluded that a suspended punitive discharge was appropriate punishment for the offender and the offenses.

By letter of 31 March 1976 the Judge Advocate General returned the record of trial, stating:

"It is the policy of the Judge Advocate General not to entertain requests for the exercise of authority, pursuant to reference (b) (JAGMan, Sec 0129(2)(1)), prior to the completion of appellate review by the Navy Court of Military Review. Should the Navy Court of Military Review conclude that a recommendation of suspension of an adjudged punitive discharge is warranted in an appropriate case, such recommendation will be addressed following completion of review pursuant to reference (a) (Art. 66, UCMJ)." (Citations added).

Following receipt of the Judge Advocate General's letter this Court was afforded the opportunity for en banc consideration of this case as it relates to the power of the

Court of Military Review to suspend execution of a portion of a court-martial sentence—a question of exceptional importance. Rule 18, Courts of Military Review Rules of Practice and Procedure, 1 August 1969, NAVSO P–2319. For various reasons that opportunity was declined. The case remains for consideration by Panel 2.

Initially, it was presumed, although not decided, that there is no power in this Court to suspend the punitive discharge, and thus suspension of the sentence was sought through the Judge Advocate General. In essence, the reasoning was the same as that expressed in my concurring opinion, set out in *United States v. Miller*, No. 75 1831 (NCMR 31 October 1975). We now must decide whether that presumption is correct.

My opinion in *Miller, supra,* sought to avoid a confrontation with the rule set forth in *United States v. Simmons*, 2 U.S.C. M.A. 105, 6 C.M.R. 105 (1952), and in *United States v. Woods,* 12 U.S.C.M.A. 61, 30 C.M.R. 61 (1960). In *Miller,* I would have had this Panel recommend to the Judge Advocate General of the Navy that he suspend the punitive discharge. The validity of such action by this Court depends on the Judge Advocate General taking action as recommended. Whether he does so or not, and perhaps in any event, this Court may thereby abandon its statutory responsibility as set forth in Article 66, UCMJ, to:

". . . affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."

The action of the Judge Advocate General on 31 March 1976 illustrates the error in my previous reasoning—we concluded that a suspended punitive discharge was appropriate and so recommended, yet no action was taken to suspend the discharge as recommended. If the *Simmons-Woods* rule applies, the Court is placed in a position of having to affirm a sentence which it does not consider appropriate—either an unsuspended bad conduct discharge, or no punitive discharge. The Judge Advocate General of the Navy correctly, and most wisely,

forced this Court to "bite the bullet," rather than seek the easy way out of its dilemma concerning appropriateness of the sentence. *Compare United States v. Cavallaro*, 3 U.S. C.M.A. 683, 14 C.M.R. 71 (1954).

Under these circumstances, it is high time we face and resolve the real issue presented—stated as follows:

"What, if any, action may the Court of Military Review taken to ensure, in an appropriate instance, that a portion of a court-martial sentence is suspended?"

The cases found in military law since 1952 appear to accept the hypothesis that the Court of Military Review should have some sentence suspension power. *See, e. g., United States v. Simmons, United States v. Woods,* both *supra, United States v. Glaze,* 22 U.S.C.M.A. 230, 46 C.M.R. 230 (1973), *United States v. Keller,* 23 U.S.C.M.A. 545, 50 C.M.R. 716, 1 M.J. 159 (1975).

Reasons for the Court having that power are numerous and varied, they are succinctly set out in the cases cited and in the concurring opinion. But, the *Simmons* and *Woods* cases, *supra,* consistently have been taken to preclude exercise of any initial suspension power by this Court. That phenomenon may be attributed in part to a respect for the principle of *stare decisis, see Glaze* and *Miller, supra,* and possible misinterpretation of the prior holdings. Ultimately, an analysis of *Simmons* and *Woods* must be undertaken to answer the issue, bearing in mind those holdings are due the utmost respect for the precedent they establish. They may not be overruled by this Court. *United States v. Heflin,* 23 U.S.C. M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975), footnote 6 at 132.

Examining *Simmons* we see that in 1952, the Judge Advocate General of the Navy certified the following question to the United States Court of Military Appeals:

"Has a Board of Review, as a matter of law, the authority to suspend a bad conduct discharge for a probationary period, as was done by the Board of Review in this case?" (*United States v. Simmons, supra* ).

That certified issue was answered in the negative. The decision was founded on the following rationale.

Article 66, Code, *supra*, confers no express power of suspension upon autonomous three member Boards of Review. The historical development of suspension authority in the military-legal sphere shows that it has been vested solely in authorities having power to order execution of a sentence. Since Boards of Review have never had power to order sentences executed, it follows they have never had power to order a sentence suspended. No contrary military case has been found. Consequently, Congress would have used express language to alter the rule had they desired to alter it.

In light of the reasoning in *Simmons*, and twenty-five years under the Code, the rule enunciated now seems to state a truism. That is, only one having execution authority may actually suspend the execution of a sentence, because suspension authority must be a part of execution power. In this context, the act of execution may be held in abeyance/suspended. Actual execution of a sentence may only be suspended by the person charged with ordering the sentence into execution. *Simmons* holds then that actual suspension of a sentence necessarily requires authority to execute it, and Boards of Review may, therefore, not actually suspend a sentence. Whether that holding applies to Courts of Military Review is yet to be decided.

We have examined a copy of the unpublished Board of Review decision in the *Simmons* case, *United States v. Simmons*, No. 5–52–G–247 (N.B.R. 22 May 1952), attached as Appendix I. Our examination leads to the conclusion the Board framed its decision in terms of authority to execute the suspension of a given sentence. In fact, the Board action, in the opinion at page 6, states:

". . . (W)e find the approved findings of guilty correct in law and fact and they are affirmed. Only so much of the sentence is affirmed as includes . . . a bad conduct discharge, the *execution* of which discharge is suspended for the period of confinement and 6 months thereaft-

er, at which time, unless the suspension is sooner vacated, it shall be remitted without further action (emphasis added)."

In *Woods* the Judge Advocate General of the Army certified the following issue to the High Court.

"Was the board of review correct in holding that it has the power to suspend the execution of a punitive discharge?"

The certified issue was answered in the negative, citing *Simmons*, and speaking in positive terms as to actual suspension of execution of a sentence, rather than in the passive "affirming" sense. The holding also applied to the power of boards of review.

*Simmons* and *Woods* do not provide detailed guidance as to the construction to be afforded to the more passive operative words "affirm" and "approved" in Article 66, UCMJ, dealing with this Court's jurisdictional authority to act on the sentence or a part or amount of a sentence awarded by a court-martial. *Woods*, however, comes closer to the issue than does *Simmons*.

Stated another way, those cases confirm only that the Boards of Review may not extend jurisdiction into the convening authority's area of responsibility, without express statutory authority—to order sentences executed, and rightly so. The same rule may be applied to Courts of Military Review. But, that rule seems far removed from holding that the Court of Military Review is precluded from affirming a portion of the entire sentence spectrum as awarded by a court-martial and approved by other reviewing authorities. So long as this Court maintains and restricts its action to its peculiar statutory jurisdictional limits, it acts within its authority—to affirm that part or amount of a sentence which it determines should be approved. Article 66, Code, *supra*. That is the statutory jurisdictional limit of this Court. Congress conferred it, and only the Congress may take it away. That the Congress must have intended to confer some suspension power on this Court by the statute seems beyond doubt, even in the nebulous world of statutory construction. *See United States v.*

*Russo,* 11 U.S.C.M.A. 352, at 358, 29 C.M.R. 168, at 174 (1960). The Court does not thereby become a sentence executing authority. But, it must act to approve and affirm the court-martial sentence or any part or amount of the sentence in the cases before it. *Woods* and *Simmons,* dealing as they do with the jurisdictional limits of this Court's predecessor Boards of Review, should be strictly construed and limited in application to the narrow issue certified therein—the actual suspension of a sentence.

Turning to the sentence itself, logic impels the conclusion that a suspended sentence/punishment lies somewhere on the linear spectrum between an approved and executed sentence as awarded, and a sentence which is set aside and not executed. It is a part or amount of a sentence. Suspended punishment predicated on good behavior is a form of punishment. It is restrictive in nature, rehabilitative in effect, and deters future misconduct. It is not as severe in the first instance—a lesser punishment; and more onerous in the second—a greater punishment. Since this Court may reduce the severity of any sentence, as it comes to the Court, *Russo* and *Cavallaro, supra,* it may initially approve and affirm a suspended sentence—but, it may not execute the suspension. *See United States v. Estill,* 9 U.S.C.M.A. 458, 26 C.M.R. 238 (1958), *United States v. Glaze, supra.*

■ The foregoing discussion makes it apparent that the Court of Military Review may *affirm* a sentence which provides for suspension of all or a portion or amount of the sentence, if the Court concludes that is the sentence which should be approved. That seems to be the exact intent of the Congress in Article 66, Code, *supra.* If such be the case, there is no need to provide specific suspension authority for this Court in Articles 71 and 74, Code, *supra,* which deal with sentence execution and its accompanying suspension power as noted in *Simmons, supra.* Mention of this Court's suspension jurisdiction in Articles 71 and 74 would result in confusion and unnecessary redundancy in the Code. It would be out of

place, in view of the broad and total authority of this Court to act on a sentence by approving and affirming it as provided in Article 66, Code, *supra,* sans, sentence execution power. Thus, I conclude the Court of Military Review has no authority to execute a suspended sentence. It does have authority to approve and affirm a sentence or any part thereof, including a suspended portion, on its own motion and exclusive of action by prior reviewing authorities.

Granted, when this Court affirms a suspended sentence, with the suspension provision included on the Court's own motion, the hands of the sentence executing authority are tied, to some degree—but no more so than by any other mitigating action which the Court may impose on that authority by approving only a portion of a sentence. In fact, a lesser restriction is imposed by affirming a suspended sentence, since misconduct by an appellant which takes place between the date a court-martial sentence is awarded and that on which a probationary action is signed, may be considered in a hearing to revoke probation under Article 72(a), Code, *supra. United States v. Williams,* 21 U.S.C.M.A. 292, 45 C.M.R. 66 (1972).

■ Provisions in the *Manual for Courts-Martial, United States, 1969* (Revised edition), *e. g.* par. 100a, which may be construed as limiting this Court's jurisdiction in affirming suspended sentences, are considered to have no force or effect for two reasons. The first is that the Court's jurisdictional authority is conferred by Congress, Article 66, Code, *supra,* and may not be restricted by executive action. The second is that those provisions are apparently based on interpretations of the holdings of our High Court, and misconstrue the law that Court announced. *United States v. Cox,* 22 U.S.C.M.A. 69, 46 C.M.R. 69 (1972).

■ In sum, *Simmons* and *Woods, supra,* need not be overruled. Recognition is afforded to the statutory authority and long recognized need of this Court to act to suspend a sentence or a portion of a sentence, if deemed appropriate, by approving

and affirming a suspended sentence, on the Court's own motion, without executing the suspension. One caveat must accompany this conclusion. The jurisdiction of the Court of Military Review is limited to review of the record and allied papers. Consequently, consideration as to suspension action is, also, so limited. Post-trial conduct of an accused should not be considered by this Court in determining an appropriate sentence, whether the sentence is suspended or not suspended. Consideration of post-trial conduct as it bears on a sentence is better left, indeed it must be left, to sentence-execution authorities and to other clemency authorities. *See United States v. Lair,* No. 74 2853 (N.C.M.R. 31 March 1976). To that extent the jurisdiction of the Court of Military Review is limited in acting on a sentence. A suspended bad conduct discharge may be affirmed.

By such action, the convening authority retains sentence execution authority. He is free of any but the standard intervention by this Court in all cases referred to it, to approve and affirm the findings and the sentence as set out in Article 66, Code, *supra.*

I am not unmindful of the possible conclusion that my construction of the holdings in *Simmons* and *Woods, supra,* is in reality, a distinction without a difference. As noted by Judge Duncan in *Glaze, supra,* the difference is subtle. I conclude, however, that there is a tangible difference in the power to affirm a part or amount of a sentence, including suspension of a portion thereof, on one hand, and the power or authority to directly and actively execute a sentence, whether or not suspended, on the other. I believe Congress placed the former within this Court's jurisdiction. I believe a suspended sentence entails punishment, and is therefore a sentence in and of itself, upon which this Court may act in an unrestricted manner in affirming a sentence.

██ In consonance with the foregoing, I would affirm the findings, and only so much of the sentence as provides for 45 days confinement at hard labor, forfeiture of $200.00 pay per month for three months, and a bad conduct discharge suspended until 18 September 1976 or some earlier date as may be determined appropriate by the convening authority. The suspension action shall be subject to the normal terms and conditions of suspension, set out in current law and regulations, as may be implemented by the convening authority in his action on this sentence.

My brothers' concurrence results in the foregoing becoming the decision in this case.

Judge LAPPIN concurs.

APPENDIX I

DEPARTMENT OF THE NAVY
OFFICE OF THE JUDGE ADVOCATE GENERAL
BOARD OF REVIEW

UNITED STATES

V.

BENNEY RAY SIMMONS, 296–68–87, SEAMAN, U. S. NAVAL RESERVE

TRIED ON 17 DECEMBER 1951 BY A GENERAL COURT–MARTIAL
APPOINTED BY
W. D. JOHNSON,
REAR ADMIRAL, U. S. NAVY,
CHIEF OF NAVAL AIR TECHNICAL TRAINING.

DECIDED 22 MAY 1952

BEFORE CHARLES J. WHITING, J. FIELDING JONES AND MARCUS L. WHITFORD

No. 5–52–G–247

*Appearances*: Lieutenant (jg) Robert E. Dunne, U. S. Naval Reserve and Commander R. V. Van Wolkenton, U. S. Navy, appellate counsel for the accused. Captain Carl G. Lutz, U. S. Marine Corps, appellate counsel for the United States.

The record in this case was approved on review below as follows:

FINDING: Guilty of violation of:

I – Art. 86 UCMJ – 1 Spec: U.A. 66 days – apprehended (lesser included offense of Art. 85 UCMJ – Desertion).

SENTENCE: Confinement at hard labor for 6 months, forfeiture of all pay and allowances, and a bad conduct discharge, but the bad conduct discharge is suspended until the accused's release from confinement or until completion of appellate review, whichever is the later date.

DECISION

The accused stands convicted of unauthorized absence for a period of 66 days. He has no record of previous conviction and has had 3 years prior service in the Navy terminated by honorable discharge. He is 23 years old. He has a $40 family allowance. There is no evidence in aggravation.

Had his absence been terminated only 6 days earlier, no punitive discharge could have been adjudged. The maximum limit of punishment for his offense would then have been 6 months confinement at hard labor and forfeiture of 4 months' pay (Table of Maximum Punishments, 127*c* MCM 1951).

The question thus presented to this Board, and most ably argued by appellate counsel is does the additional 6-day absence of this accused justify this Board in affirming the sentence approved on review below, viz: confinement at hard labor for 6 months, forfeiture of all pay and allowances, and an unsuspended bad conduct discharge?

We think not. The sentence, though legal, differs from the maximum authorized punishment only in that a bad conduct discharge, rather than a dishonorable discharge was adjudged. Obviously this accused, who went home without leave to attend his deformed wife in childbirth and a dying baby only after his urgent request for leave to his chaplain and division officer had been denied, should not be separated from the service under conditions of dishonor. The Manual states:

"The maximum punishment prescribed for the offense should be restricted to those cases in which, due to aggravating circumstances, the greatest permissible punishment should, in the discretion of the court, be imposed." 127*c* MCM 1951.

Further,

"A bad conduct discharge may be imposed in any case in which a dishonorable discharge may be imposed as well as in certain other cases. It is a less severe punishment than dishonorable discharge and is designed as a punishemnt for serious offenses of either civil or military nature. *It is appropriate as punishment for an accused who has been convicted repeatedly of minor offenses and whose punitive separation from the service appears to be necessary.*" (76a(7) MCM 1951. Emphasis added).

To further determine whether or not the punitive separation from the service of this accused appears to be necessary we deem it appropriate to take judicial notice of paragraph C–10314(2), BuPers Manual, cited by appellate defense counsel. This paragraph states:

"It has been, and continues to be, the Navy Department's policy that convening and reviewing authorities should approve discharges only in

those cases when the enlisted person's records and conduct show conclusively that they are not fit for retention, and when retention is clearly not in the Government's interest."

The Manual, in setting up a guide for the convening authority's determination of what sentence should be approved, states *inter alia*:

"* * * Appropriate action should be taken to approve a less severe sentence when the sentence, though legal, appears unnecessarily severe. In approving severe sentences, consideration should be given to all factors, *including the possibility of rehabilitation* as well as the possible deterrent effect." (88*b* MCM 1951. Emphasis added).

We consider that a suspended bad conduct discharge is less severe than an unsuspended one, and we so hold. The Manual then, in 88*e*, sets up a guide for the convening authority as to when he should *not* suspend the execution of a punitive discharge. Two such cases are enumerated:

(1) A conviction of an offense showing that degree of moral turpitude which obviously disqualifies the accused for military service.

(2) When it would be contrary to the customs of the service to execute the portion of the sentence that remains unsuspended.

Neither of these two prohibitions applies in the case at bar.

Appellate government counsel argues that from the evidence, there is doubt that the accused is fit material to be reinstated in the service. He may change his mind about wanting to stay in the Navy, as sworn to by himself and his wife. We agree with counsel in this contention. But this argument makes us all the more firm in our belief that a *suspended* BCD, rather than an *unsuspended* BCD, or a *remitted* BCD, is proper in this case. If the accused is sincere, and was telling the truth, he will undoubtedly be successful in the serving of his probationary period, in which event, his punitive discharge will be unconditionally remitted. If not, the Navy will not be forced to keep an unfit man for the remainder of his current enlistment, and the accused will get the punitive discharge which he will then deserve without the necessity of resorting to further court-martial proceedings.

This Board is charged with the duty to:

"* * * affirm only such findings of guilty, and the sentence, or *such part or amount of the sentence, as it* finds correct in law and fact and *determines on the basis of the entire record should be approved.* In considering the record, it [the Board of Review] shall have authority to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." (Art. 66*c*. Emphasis added).

These are broad powers. They are more extensive than those ordinarily exercised by appellate tribunals (24 C.J.S. Criminal Law, Sec. 1880). We are even less circumscribed than is the United States Court of Military Appeals (See 67*d* UCMJ and U. S. v. McCray, 1 U.S.C.M.A. 1). Notwithstanding this special grant by Congress, Boards of Review have hitherto been hesitant to do that which, on the basis of the entire record of a proper case seems just, viz: to suspend the execution of the sentence or a part thereof, for a probationary period within which the accused may show by his conduct that he is entitled to have the suspended portion remitted. Although they (the Boards of Review) avow their obligation to affirm a sentence which includes a suspended punitive discharge in a proper case, they decline to suspend the punitive discharge *in the same case,* if it reaches them in an unsuspended state. We fail to see the soundness of this position.

Three arguments have been advanced in opposition to our exercise of the power of suspension. The first is that we are not specifically given this power by express words in either the Code or the Manual and since we are a creature of the legislature, our powers must be strictly construed. We reject this argument because of the plain intent of Congress to give Boards of Review broad powers as discussed above. If the intent had been to withhold from us the power of suspension, we believe such a prohibition would have been included in the Code by express words.

We have been unable to find any such denial of power anywhere in the legislative history of the UCMJ. On the other hand, we find much affirmative matter to show an intent to endow us with all the authority necessary for a *full* compliance with Article 66c. We believe we have inherent power to suspend sentences, or parts of sentences, if in our opinion, such action is necessary to make a sentence just.

Judge Latimer, the organ of the Court of Military Appeals, in the case of U. S. v. Reeves, —— U.S.C.M.A. ——, decided May 15, 1952 (in which a Board of Review was reversed for holding, as a matter of law, that it was without authority to reconsider one of its own opinions), stated:

"We believe that in order to prevent chaotic appellate conditions from developing the boards of review must clothe themselves with some of the powers inherent in courts."

The second argument is that since Article 74 expressly gives to the Secretary of a department and others specifically designated by him power to suspend sentences, such power is, by implication, denied to us. A similar argument was advanced in the Reeves case, supra, and was answered by Judge Latimer as follows:

"We do not believe this narrow construction is compelled as there was a clear congressional intention not to permit the Judge Advocate General [or, if we may add, the Secretary of a Department] to stifle and control the judicial acts of boards [of review]."

By exercising the power of suspension we are not usurping functions reserved for others. We are bound to bottom our review solely on the record, and it would be improper, we believe, for us to consider anything obtained outside it (matters of judicial knowledge and those enumerated in Article 73 excepted). The Secretary of a Department, however, is not so bound by Article 74. Our suspension of a punitive discharge, if that be necessary to make a sentence just, does not prevent others from taking further mitigating action on the sentence.

This brings us to the third argument, that the placing of a sentence or part thereof under suspension for a probationary period is pure clemency and not a judicial affirmation of a part or amount of the original sentence. It is argued that we should remit the punitive discharge outright if we feel it is excessive. The exercise of clemency, in our opinion, does not mean the reducing of an excessive punishment to the degree of a just punishment. Clemency as we view it, starts with the just sentence and reduces it to a lower degree.

The exercise of the power of suspension by a Board of Review is, we believe, part of the judicial function which we are required to perform under the authority of Article 66c. In the case of Tah Do Quah v. State (Criminal Court of Appeals of Okla., 70 P. (2nd) 918), the court stated:

"The power of this Court to modify a judgment appealed from is the exercise of a judicial function as an award of and in furtherance of justice, and is not the exercise of the power of clemency or of commutation conferred by the Constitution upon the chief executive."

The Oklahoma Appellate Court then reduced a sentence for forgery from one year and two months to 90 days because, although the evidence was sufficient to sustain the conviction, the record showed that the defendant, a destitute Indian, was not a "criminal at heart." The power of clemency was vested in the governor by the Constitution of Oklahoma. The suspension of the punitive discharge in the case at bar is not clemency, but the exercise of our judicial function.

That a suspended bad conduct discharge is a punitive discharge was decided in U. S. v. Phillips —— U.S.C.M.A. ——. There, the court held that the convening authority is not required to reduce a period of confinement to not more than six months and forfeiture of pay to not more than two-thirds pay for six months (see 127b MCM 1951) when he suspends a punitive discharge on probation.

By a parity of reasoning, we do not consider that we must remit outright a sentence to punitive discharge when we believe the just sentence, on a considera-

tion of the entire record, is the punitive discharge suspended for a probationary period. The Manual states that a bad conduct discharge is a lesser included part of a dishonorable discharge (see 88c MCM 1951). So, also, we believe that a suspended bad conduct discharge is a lesser "part or amount" of a bad conduct discharge and we so hold.

The words of the Code, accepted as giving the convening authority and supervisory authority the power of suspension, among his other powers of review, are as follows:

"In action on the findings and sentence of a court-martial, the CA shall approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds· correct in law and fact, and as he in his discretion, determines should be approved. * * *" (Article 64. Underscoring added)

Article 66c, the empowering act for Boards of Review, uses the following words:

"It [the Board of Review] shall affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." (Underscoring added)

The only appreciable difference in the wording of these sections is that a convening and supervisory authority, in determining what part of the sentence should be approved, is limited only by his *discretion,* whereas a Board of Review must base its action *on the entire record.* The reviewing officers may go outside the record. A board of Review may not. True, Article 64 is implemented by a chapter (Chapter XVII) of the Manual, whereas Article 66c is covered only by a single paragraph (100 MCM). We believe, however, that members of Boards of Review, being lawyers, are expected to make full use of well known legal concepts. That judicial bodies have inherent powers to do that which is necessary for the proper exercise of their judicial functions, to us, seems fundamental. Equally detailed implementation of Article 66c and Article 64 should not be, and is not necessary, since the majority of those officers who must act under the authority of Article 64 have no lawyers to advise them.

From the similarity of wording of the two-above quoted portions of the Code, for the reasons above stated, and because we consider it necessary for a proper and complete exercise of our judicial function, we believe we have authority, based on Article 66c, to exercise the power of suspension of sentences, and we so hold.

### Action by the Board

In the above-entitled case we find the approved findings of guilty correct in law and fact and they are affirmed. Only so much of the sentence is affirmed as includes confinement at hard labor for 6 months, forfeiture of all pay and allowances for 6 months and a bad conduct discharge, the execution of which discharge is suspended for the period of confinement and 6 months thereafter, at which time, unless the suspension is sooner vacated, it shall be remitted without further action.

/s/
C. J. WHITING

/s/
M. L. WHITFORD

(See dissenting opinion)
J. FIELDING JONES

## DISSENTING OPINION

I dissent. The opinion of the majority sets forth the arguments against the power of a Board of Review to suspend a bad conduct discharge. I shall not belabor the issue further. Suffice it to say that in my opinion the affirmative of the propositions stated in the majority opinion are beyond cavil.

My attention has been called to the case of Zeigler v. District of Columbia (DC Mun App, 71A2d 618) decided February 16, 1950. Appellant was convicted of violation of a traffic regulation and was sentenced to ten days in jail but the execution of the sentence was suspended on the appellant's promise under oath not to repeat the offense. Appealed from, the government contended that no valid sentence had been inposed from which an appeal may be taken. It was conceded that for many years there had existed in the trial court (the police court) the practice of suspension of execution of sentence on the personal bond or recognizance of the defendant. Such suspension was permanent in effect. The government admitted that this practice is of long standing and asserts that it has in many instances served a salutary purpose, and it now contends that the practice is without authority in law. In holding that the unauthorized suspension of execution of sentence did not deprive the appellant of his right of appeal the court stated:

> "Since the decision of the Supreme Court in Ex Parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129, L.R.A. 1917 E, 1178, Ann Cas 1917 B, 355, it has been established that in the absence of statutory authority, there is no inherent right in any court of the federal judicial system to suspend execution of sentence in a criminal case (citing cases). Power today in the federal courts to suspend imposition or execution of a sentence is derived from the Federal Probation Act, Frad v. Kelley, 302 U.S. 312, 58 S.Ct. 188, 82 L.Ed. 282; Roberts v. U. S., 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41." (underscoring supplied)

The majority looks to the *effect* of its action (assuming it to be legal) when it declares that a bad conduct discharge suspended is a less severe sentence than a bad conduct discharge executed. I agree that the incidents of the suspension are indeed less severe, but only for so long as the discharge remains unexecuted. A bad conduct discharge suspended is still a bad conduct discharge. A bad conduct discharge is the *sentence* and the Board of Review may approve only so much of a *sentence* as it finds correct in law. The trial court is powerless to sentence an accused to a suspended bad conduct discharge for the simple reason that suspension of a sentence is not authorized by the statute. It follows, therefore, that a Board of Review in making its finding as to the legality or appropriateness of a sentence imposed by a court-martial must make its finding on the *sentence.* If the sentence is not divisible the Board cannot divide. It can only approve or disapprove.

As a very practical matter the multitudinous and complex administrative incidents which necessarily attach to a suspended sentence could hamper and duplicate those effective and excellent agencies already created to rehabilitate the accused.

I do not doubt the sincerity or conviction of my colleagues of the majority, but I must resist the assumed excursion into the field of pure clemency.

/s/_____
J. FIELDING JONES

FULTON, Judge (concurring):

I concur.

Our examination of the record of trial in this case led us to conclude that only suspension of the punitive discharge for a probationary period would strike an appropriate balance between the nature of the offenses and the individual background and rehabilitative potential of this offender. We found that neither approval of an unsuspended bad conduct discharge nor disapproval of the discharge altogether would be compatible with our mandate under Article 66(c) of the Uniform Code of Military Justice. Mindful that executive clemency may be granted during the pendency of the reg-

ular appellate process; *United States v. Russo,* 11 U.S.C.M.A. 352, 29 C.M.R. 168 (1960); *United States v. Clark,* No. 74 2853 (N.C.M.R. 31 March 1976) (upon reconsideration), we forwarded the record of trial to the Judge Advocate General with a request that he exercise his authority to suspend the execution of the punitive discharge, *United States v. Silvernail,* 1 M.J. 945 (N.C. M.R. 1976).[1] The Judge Advocate General, however, has declined to exercise clemency before completion of our review under Article 66 of the Code and returned the record to this Court.

Is a Court of Military Review empowered to order that a sentence be suspended for a probationary period?

The nature of the role of a Court of Military Review under the Uniform Code of Military Justice and reasons of public policy strongly favor exercise of suspension power over sentences that are subject to our review. The legislative history of Article 66 contains this description of the power of a Board of Review, now a Court of Military Review, over a court-martial's sentence:

> "The Board may set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate. It is contemplated that this power will be exercised to establish uniformity of sentences throughout the armed forces." House Report No. 491, 81st Congress, 1st Session, on H.R. 4080; Senate Report No. 486, 81st Congress, 1st Session on H.R. 4080.

Reduction of disparity in sentences awarded to similarly situated defendants has been widely recognized as an important goal of the criminal justice process in the decades since the enactment of the Uniform Code. *See, e. g.,* 28 U.S.C. § 334, which, "In the interest of uniformity in sentencing procedures, authorized the establishment of institutes and joint councils on sentencing" & ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Appellate Review of Sentences,* approved by the ABA House of Delegates in February 1968, § 1.2. The Honorable Marvin Frankel, United States District Judge, Southern District of New York, has said, "the crazy quilt of disparities—the wide differences in treatment of defendants whose situations and crimes look similar and whose divergent sentences are unaccounted for—stirs doubts as to whether the guarantee of the 'equal protection of the laws' is being fulfilled." Frankel, *Criminal Sentences, Law Without Order,* (1972) p. 103.

It has been said that courts with criminal jurisdiction have the inherent power to suspend sentences and that such power is derived from the common law, customs, and judicial decisions. 21 Am.Jur.2d (1957), Criminal Law, sec. 552. On the other hand respectable authority dictates that absent statutory authority, "a court does not possess any power to suspend a sentence." 5 Wharton's Criminal Law and Procedure, 1957 ed., sec. 2192; *United States v. Simmons,* 2 U.S.C.M.A. 105, 6 C.M.R. 105 (1952). I agree with the Senior Judge that suspension authority is granted by Article 66, UCMJ.

This appeal demonstrates that examination of the entire record may convince us that the appropriate sentence should include a probationary period during which the rehabilitation of the offender will be motivated in part by his awareness that the "Sword of Damocles" we have suspended above him will fall if he lapses into wrongdoing. In the past a Draconian approach to either the appellant or to the United States resulted because we either approved punishment to be executed or disapproved the punishment entirely if we did not wish to countenance its execution. Confronted by this Hobson's choice, we often overstep the mark by gross action despite our awareness that the more moderate response of retaining the element of punishment but suspending its execution would be the fittest course to follow. Suspension power provides this Court with a tool of considerable precision and flexibility in setting terms of actual

---

[1] I there recognized that we do not have access to appellant's service record or other allied papers which may bear on suspension and probation.

confinement and providing an opportunity to an appellant to forestall punitive discharge by completing a period of creditable service. It would be particularly valuable in reducing disparity in the quantum of punishment actually experienced by different defendants.

Granting that an ability to suspend the execution of a sentence is desirable, is there a demonstrable basis for this power in the language of the Code? Article 66(c), which sets out the scope of review and powers of this Court therein, contains this provision:

> "In a case referred to it, the Court of Military Review may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."

This subsection grants the power to remit a sentence entirely. *United States v. Simmons, supra.* Remission of a punitive discharge or other punishment is a more extensive act than suspension of the punishment for a probationary period. In the latter instance misbehavior by the probationer may lead to vacation of the suspension and reimposition of the suspended punishment. In the former instance the punishment is entirely annihilated and cannot be reinstated under any circumstances. It would appear to follow that power to accomplish the greater result includes and implies the power to accomplish a result of a lesser magnitude.

Two principles of statutory construction provide that:

> "The statute embraces such consequential applications and effects as are necessary or essential or natural or proper." 2A Sutherland, *Statutory Construction* § 55.-03 (4th edition).

> "Where a statute confers powers or duties in general terms, all powers and duties incidental and necessary to make such legislation effective are included by implication." *Id.* § 55.04.

As Senior Judge Newton points out, if an unsuspended, executed sentence be taken as the standard, then a suspended sentence is a lesser portion or degree than the standard, for it must be ordered into execution before the accused suffers the punishment. Thus the language of Article 66(c) which permits this Court to approve "such part or amount of the sentence" as it determines should be approved implies the incidental and necessary power to accomplish this result by ordering suspension of a portion of the sentence for a probationary period. In *People v. Zuckerman,* 5 N.Y.2d 401, 185 N.Y.S.2d 8, 157 N.E.2d 862 (1959), the New York Court of Appeals construed § 543 of the New York Code of Criminal Procedure, which provided in part that an appellate court might "reduce the sentence imposed." The Court of Appeals held that "[u]nder the broad powers of the Appellate Division to reduce sentences is included the power to hold, in a proper case, that sentence or the execution of sentence should be suspended." 5 N.Y.2d at 403–404, 185 N.Y.S.2d at 10, 157 N.E.2d at 863. The present New York statute, § 470.15 of the Criminal Procedure Law, which permits the appellate court to "modify the criminal court judgment, sentence or order", has also been interpreted as implying a power to suspend the sentence. *See, e. g., People v. Telech,* 47 A.D.2d 997, 366 N.Y.S.2d 750 (4th Dept. 1975); *People v. Bonomo,* 47 A.D.2d 862, 366 N.Y.S.2d 42 (2nd Dept. 1975). The New York court's interpretations of statutes similar to Article 66(c) of the Code seem both apposite and persuasive.

The leading military case in this area is *United States v. Simmons,* 2 U.S.C.M.A. 105, 6 C.M.R. 105 (1952). In this early case the Court of Military Appeals held that the Boards of Review did not possess power to suspend the execution of a sentence. The Court recognized the arguments in favor of the exercise of the power of suspension at the intermediate appellate level:

> "We are impressed by the defense argument of the desirability of having this power vested in the boards of review, and recognize merit in the contention that boards of review cannot adequately fulfill

the mandate either to impose appropriate sentence or ensure uniform sentence practices throughout the services unless they have the power to suspend disciplinary discharges. In addition, it seems anomalous that a board should have the power to remit a disciplinary discharge entirely, but not to suspend it for a probationary period." 2 U.S.C.M.A. at 106, 6 C.M.R. at 106.

The Court held, however, that Congress' failure to expressly grant such power in Article 66 compelled the conclusion that suspension power did not exist in the boards of review. *See United States v. Cavallaro,* 3 U.S.C.M.A. 653, 14 C.M.R. 71 (1954).

The policy reasons acknowledged by the Court of Military Appeals in *Simmons* have taken on additional importance as our caseload has risen, with the consequent increase in the number of cases where our exercise of a suspension power would be appropriate. Our possession of this power is inherently neutral, favoring neither appellant nor the United States, for it gives us an ability to retain some element of the sentence when we find approval of an unsuspended sentence impossible and might otherwise be impelled to disapprove the sentence entirely absent the power to suspend. Time has sapped the vitality of *Simmons. Compare United States v. Cox,* 22 U.S.C. M.A. 69, 46 C.M.R. 69 (1972) *with United States v. Keller,* 23 U.S.C.M.A. 545, 50 C.M.R. 716, 1 M.J. 159 (1975). In his dissent to the *Keller* decision, Judge Cook stated, "I also disagree with the majority's disposition, which apparently contemplates that the Court of Military Review cure the perceived error by affirming only a suspended sentence." 23 U.S.C.M.A. 547, 50 C.M.R. 718, 1 M.J. 161. In light of these cases and their generally more expansive view of the express and implied judicial powers of this Court, *cf. Kelly v. United States,* 23 U.S.C. M.A. 567, 50 C.M.R. 786, 1 M.J. 172 (1975) (all writs power of Court of Military Review), our judicial superiors might re-examine the reasoning of *Simmons* and confirm instead the between-the-lines implication of *Keller* discerned by Judge Cook.

I agree with the Senior Judge that the Appeals Court did not come to grips with the issue in *Simmons, supra.* Unlike many appellate courts, we are expressly charged by statute with adjudicating anew a "sentence or such part or amount of the sentence" as we determine in our absolute discretion is "correct in law and fact" and "on the basis of the entire record, should be approved." Article 66, UCMJ. In this area then we are required to exercise that judicial sentencing power traditionally given to the trial court, *cf.* 18 U.S.C.A. 3651. Our authority has been held to include the power to suspend under certain circumstances. *United States v. Cox, supra; United States v. Glaze,* 22 U.S.C.M.A. 230, 46 C.M.R. 230 (1973); *United States v. Estill,* 9 U.S.C.M.A. 458, 26 C.M.R. 238 (1958); *United States v. Keller, supra.* Consequently, I am convinced that *Simmons* is not controlling. I likewise agree with Senior Judge Newton's rationale as to the application of paragraph 100a, *Manual for Courts-Martial, United States, 1969* (Revised edition). The *Manual* states merely an opinion as to existing case law rather than expressing a presidential mandate requiring compliance.

I concur in affirming the findings and affirm so much of the sentence as provides for a suspended bad conduct discharge, confinement at hard labor for 45 days, and forfeiture of $200.00 per month for three months. Appropriate authority will provide that the period of suspension run for one year or less from the date sentence was adjudged and at the expiration of that period, unless sooner vacated, the bad conduct discharge be remitted without further action.