**UNITED STATES**

v.

**Airman Max S. LUCAS, FR 520–02–4524, United States Air Force.**

**ACM 27596.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 31 Jan. 1989.

Decided 22 May 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair; Captain Mark R. Land and Major G. Michael Lennon, USAFR.

Appellate Counsel for the United States: Colonel Joe R. Lamport.

Before FORAY, MICHALSKI and MURDOCK, Appellate Military Judges.

DECISION

MURDOCK, Judge:

This case came to us on its merits. Our review has caused us to be concerned about the appropriateness of the approved sentence. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

Airman Lucas was raised in rural Wyoming and entered active duty in June 1987.

His initial, and only, duty assignment was as an apprentice dental specialist at the base dental clinic at McChord Air Force Base, Washington. His immediate supervisor and reporting official in the dental clinic was Sergeant Sagmiller. In the only Airman Performance Report filed in the record of trial, Sgt Sagmiller states that "Amn Lucas has had difficulty adapting to the restraints of the military community. With maturity and time he will make a model airman." This performance report covers the time period from June 1987 to June 1988.

The charges in the present court-martial were that Amn Lucas used cocaine and marijuana sometime between 1 February 1988 and 31 March 1988. This is squarely within the time covered by the quoted performance report. The charges relate to one evening during which the appellant was introduced to cocaine and marijuana and encouraged to use both substances. The irony is that it was Sgt Sagmiller who invited the appellant to use the drugs.

We do not condone illegal drug use by any military member. But, we are concerned when a young airman, in his first year of active duty, is actively encouraged by his immediate supervisor to use illegal drugs. The appellant described the uses during the *Care* inquiry:

ACC: Yes, Your Honor. After five hours at that party, my supervisor, Sergeant Sagmiller, he asked me if I wanted to go uptown with him to get some more beer. So, we went uptown and bought some more beer and ended up at his friend's apartment house. While we were waiting there his friend went upstairs and came back down with some cocaine.

MJ: How do you know it was cocaine?

ACC: I don't, Your Honor. They just said that it was.

MJ: They said it was cocaine?

ACC: Yes, Your Honor.

MJ: Both Sagmiller and his civilian friend said it was cocaine?

ACC: Yes, Your Honor.

MJ: Keep going.

ACC: They then proceeded into the bedroom while I was out on the couch watching TV and drinking beer, and they were in there for about fifteen minutes and then Sergeant Sagmiller motioned me in there. I went in there and he asked me if I ever tried it before.

MJ: Tried what before?

ACC: Cocaine. I said, no. He then told me—asked me to try it. He said I'd like it. I tried it and then I went back out on the couch.

\*    \*    \*    \*    \*    \*

ACC: After I did that I went back out on the couch and they continued to stay in there for another ten to fifteen minutes and then came out. We watched TV for a few minutes and then proceeded upstairs to another person's room.

\*    \*    \*    \*    \*    \*

ACC: Yes, Your Honor. In the same building, just a different room upstairs. And, up there we met another person that I believe was the person that sold it to him, and we were sitting at a table. The guy that owned that—that room, had a glass tube and put marijuana in that and lit that up.

Later during the inquiry, the judge asked the appellant about any coercion he might have felt.

MJ: You told me that your supervisor, Sergeant Sagmiller, was the one that introduced you to this substance. Is that true?

ACC: Yes, Your Honor.

MJ: Did you feel because he was your supervisor and because he outranked you that you had some obligation to use the drug?

ACC: Yes, Your Honor, I felt I had a little obligation. But I still did it on my own.

MJ: Would you have still done it if he had been someone of equal rank to you? That is, what I'm trying to get at is whether or not you felt that you were under some order, some force, or some coercion to use this drug, or whether you did it because you wanted to do it?

ACC: Your Honor, I believe if it was someone of my own rank, I still could have and I might have still tried it.

MJ: Well, did you use this because you thought Sergeant Sagmiller was someone who you wanted to curry favor with, or did you do it because you thought you were under some legal obligation to use it because your supervisor was there?

ACC: I, uh, I did want to get on my supervisor's good side, but, I don't feel that he had that much pressure or anything. I still did it on my own.

This case resurfaces a problem the Courts of Military Review have wrestled with since their creation—our inability to suspend portions of sentences. Article 74, UCMJ, 10 U.S.C. § 874, appears to limit the power to remit or suspend sentences to Service Secretaries. It further authorizes the Secretaries to delegate this authority to any Under Secretary, Assistant Secretary, Judge Advocate General, or commanding officer. In the Air Force, this authority has been delegated, under conditions listed in the regulation, to the Judge Advocate General and convening authorities. Air Force Regulation 111-1, *Military Justice Guide,* para. 16–16 (30 September 1988). On the other hand, our authority to moderate sentences is prescribed in Article 66(c), UCMJ. It limits our review to the findings and sentence "as approved by the convening authority." A Court of Military Review is authorized to "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ.

Article 66(c) does not mention an authority to suspend a sentence, only to affirm the whole or part of a sentence. Several opinions have searched, unsuccessfully, to find an authority to suspend sentences in an analysis that a suspended sentence is a part of the approved sentence. *United States v. Healy,* 26 M.J. 394 (C.M.A.1988); *United States v. Clark,* 16 M.J. 239 (C.M.A.1983) (particularly the concurring opinion by Chief Judge Everett); *United States v. Silvernail,* 1 M.J. 945 (N.M.C.M.R.1976).

Over the years, other expedients to solve this dilemma have been tried or suggested. In *Silvernail,* the Court sent the case to the Judge Advocate General, before their final decision, for him to suspend the discharge. He refused. In *Clark,* Chief Judge Everett suggested, in his concurring opinion, that the Court of Military Review could have remanded the case to the convening authority "with instructions that he reconsider the case and approve no sentence more severe than one which included a suspended bad-conduct discharge." He repeated this suggestion in *Healy.* We believe we could also affirm the approved sentence and include language in the opinion to bring the case to the Judge Advocate General's attention for possible suspension under Article 74, UCMJ.

In our view, we are currently left with essentially a yes or no decision. Should we approve the sentence approved by the convening authority or should we disapprove it? Article 66(c), UCMJ. We feel constrained to limit our analysis to the approved sentence, not what other authorities may do to it. We are reluctant to return a case to the convening authority with a request for sentencing reconsideration. Approving a sentence is within the convening authority's discretion and we must assume he was aware of his option to suspend when the initial approval was made. On the other hand, approving a sentence and sending it on to the Judge Advocate General for further sentence modification implies that the sentence we have approved is not really the one we think should be approved.

In the present case, we believe a suspended bad conduct discharge is the appropriate sentence. This is because of the appellant's supervisor's unacceptable involvement in sponsoring his one-time drug use. Noncommissioned officers are to supervise their subordinate's military performance, not their drug use. Since we can only approve or disapprove the bad conduct discharge, we choose to give the appellant the benefit of our limited charter. Accordingly, we approve the findings of guilty and only so much of the sentence as

provides for five months confinement, total forfeitures, and reduction to airman basic.

We hope that our action will not be met with an immediate administrative discharge. The appellant has already demonstrated his ability to be returned to duty. During the sentencing portion of the trial, the Assistant Base Dental Surgeon was asked whether his knowledge of Lucas' prior drug use would prevent him from "welcoming" Amn Lucas back into the squadron. He responded, "Not a bit. As I say, this has been going on for so long that we knew what the charge was and he was able to function even up until yesterday afternoon in the clinic, and, I think that he could overcome that problem and come back to the clinic." The Noncommissioned Officer in Charge of the Dental Clinic was asked whether he would want "to work with Airman Lucas again in the future?" He replied, "I think if Airman Lucas demonstrates—well, he has in the past few months, in fact, since this charge has been made, that he can produce and he can be a productive member. And, I wouldn't mind working with Airman Lucas anytime in the future or at any other dental clinic."

After our complete review of the record, we have concluded that the findings and sentence, as modified, are correct in law and fact and that no error prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and sentence, as modified, are

AFFIRMED.

Senior Judge FORAY concurs.

Judge MICHALSKI did not participate.